UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x

IBEW LOCAL 90 PENSION FUND and :   Civil Action No.
PLUMBERS' & PIPEFITTERS' LOCAL #562 :
PENSION FUND, Individually and on Behalf :   CLASS ACTION
of All Others Similarly Situated,
:   COMPLAINT FOR VIOLATION OF THE
                Plaintiffs, :   FEDERAL SECURITIES LAWS
:
   vs. :
:
JON S. CORZINE, BRADLEY I. ABELOW, :
JOHN RANDY MacDONALD, HENRI J. :
STEENKAMP, ALISON J. CARNWATH, :
EILEEN S. FUSCO, MARTIN JOHN :
GARDNER GLYNN, EDWARD L. :
GOLDBERG, DAVID I. SCHAMIS, DAVID :
GELBER, ROBERT S. SLOAN, DAVID P. :
BOLGER, GOLDMAN, SACHS & CO., :
CITIGROUP GLOBAL MARKETS INC., :
BANK OF AMERICA CORPORATION, :
MERRILL LYNCH, PIERCE, FENNER & :
SMITH INCORPORATED, J.P. MORGAN :
SECURITIES LLC, DEUTSCHE BANK :
SECURITIES INC., RBS SECURITIES INC. :
and JEFFERIES & COMPANY, INC., :
:
                Defendants. :
:
—————————————————— x   DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired the publicly traded securities of MF Global Holdings Ltd. ("MF Global" or the "Company")[1] between February 3, 2011 and October 31, 2011, inclusive (the "Class Period"), including those persons or entities who acquired the 1.875% Convertible Senior Notes due 2016 ("February Convertible Notes"), the 3.375% Convertible Senior Notes due 2018 ("August Convertible Notes") and the 6.25% Senior Notes due 2016 ("Senior Notes") (collectively, "MF Global Notes"), pursuant or traceable to the Company's false and misleading Registration Statement and Prospectuses issued in connection with its February 11, 2011 offering of February Convertible Notes (the "February Convertible Offering"), the August 2, 2011 offering of August Convertible Notes (the "August Convertible Offering"), and its August 8, 2011 offering of Senior Notes (the "Senior Offering") (collectively, the "Offerings").  The claims are brought under the Securities Exchange Act of 1934 ("1934 Act") and the Securities Act of 1933 ("1933 Act").

2.      MF Global was a holding company.  The Company acted as a broker in markets for commodities and listed derivatives.  The Company provided access to more than 70 exchanges worldwide.  It was also an active broker-dealer in markets for commodities, fixed income securities, equities, and foreign exchange.

3.      During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results.  Specifically, MF Global's exposure to European sovereign debt was not fully described for investors.  As a result of defendants' false statements, MF Global's stock traded at artificially inflated prices during the Class Period, reaching

---

[1]      MF Global is not a defendant in this lawsuit due to its announcement of its intent to file for bankruptcy protection on October 31, 2011 under Chapter 11 of the Bankruptcy Code.

a high of $8.84 per share on April 1, 2011. While the extent of MF Global's exposure to European sovereign debt was concealed, defendants were able to raise some $900 million in the Offerings.

4.     On or about February 8, 2011, MF Global filed its Prospectus for the February Convertible Offering ("February Convertible Prospectus"), which forms part of the Registration Statement and which became effective on February 11, 2011. At least $250 million aggregate principal amount of MF Global's 1.875% February Convertible Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $37.5 million principle amount of notes), raising $242 million in gross proceeds for the Company.

5.     On or about August 1, 2011, MF Global filed its Prospectus for the August Convertible Offering (the "August Convertible Prospectus"), which forms part of the Registration Statement and which became effective on August 2, 2011. At least $325 million aggregate principal amount of MF Global's 3.375% August Convertible Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $45 million principle amount of notes), raising $316 million in gross proceeds for the Company.

6.     On or about August 4, 2011, MF Global filed its Prospectus for the Senior Offering ("Senior Prospectus"), which forms part of the Registration Statement and which became effective on August 8, 2011. At least $325 million aggregate principal amount of MF Global's 6.25% Senior Notes were sold to the public at 100% per note, raising approximately $320 million in gross proceeds for the Company.

7.     In September 2011, MF Global had been instructed by regulators to expand its disclosures regarding its exposure to European sovereign debt. MF Global provided additional disclosures. However, the regulators were still not satisfied with the disclosures.

8.      Accordingly, on October 25, 2011, MF Global provided more information about the exposure, which finally allowed the market to understand the extremely risky position MF Global held.  MF Global also announced disappointing second fiscal quarter 2012 results.[2]  The Company reported net revenue of $205.9 million for the second quarter of 2012, compared with $240.3 million for same period in the prior year.  Additionally, the Company reported a Generally Accepted Accounting Principles ("GAAP") *net loss* of $191.6 million, or ($1.16) diluted earnings for share ("EPS") for the second quarter ended September 30, 2011, compared with a loss of $94.3 million, or ($0.59) diluted EPS for the same period in the prior year.  The release stated in part:

> "Reflecting the stressed markets in the quarter, we deliberately chose to reduce overall market exposure in most principal trading activities and focused on preserving capital and liquidity," said Jon S. Corzine, chairman and chief executive officer, MF Global. "We also used the dislocation in the markets to add quality people for strategic roles, as well as expand our client relationships across our businesses."

9.      As a result of this news, MF Global's stock declined $1.69 per share to close at $1.86 per share on October 25, 2011, a one-day decline of nearly 48% on volume of nearly 63 million shares.

10.     At this time, MF Global's credit ratings were also reduced to below investment grade. MF Global's February and August Convertible Notes and Senior Notes declined to below 50% of par.

11.     On October 25, 2011, *Bloomberg* issued an article entitled "MF Global Drops by Most Since 2008," which stated in part:

> MF Global Holdings Ltd. (MF), the futures broker that had its credit rating cut yesterday to the lowest investment grade, reported its largest-ever quarterly loss, sending shares down the most since March 2008.

_____

[2]      MF Global's fiscal year ends March 31.

The net deficit was $191.6 million, or $1.16 a share, for the three months ended in September, compared with $94.3 million, or 59 cents, a year earlier, New York-based MF Global said today. The biggest prior decline was $111.7 million in the three months ended March 2009, according to data compiled by Bloomberg. Excluding costs from restructuring, deferring tax asset valuations and retiring debt, the loss was 9 cents a share, missing the 5-cent average profit estimate of 11 analysts surveyed by Bloomberg.

*  *  *

"MF's results are severely below expectations," Ed Ditmire, an analyst with Macquarie Group Ltd. in New York, wrote in a note to clients. "It's very likely that MF expectations need to be recalibrated lower over the near-term." Ditmire had expected it to earn 3 cents a share on an adjusted basis.

*  *  *

The firm's credit ratings were cut yesterday by Moody's Investors Service on concern that the broker won't meet earnings targets and isn't sufficiently managing risk. The rating company lowered the long-term ranking to Baa3 from Baa2 and left MF Global on review for a further downgrade.

"If market volatility stays elevated, we question how the firm is going to achieve the earnings necessary to avoid a downgrade of its debt to junk status, which in turn could materially impact its ability to act as a counterparty as well as raise MF's cost of debt," Patrick O'Shaughnessy, an analyst at Raymond James & Associates in Chicago, said in a note to clients.

12. Subsequently, on October 28, 2011, trading in MF Global common stock was halted on the New York Stock Exchange ("NYSE"). The stock was then trading at $1.20 per share.

13. On October 31, 2011, MF Global announced that the New York Federal Reserve had suspended the Company's designation as a primary dealer. Also on October 31, 2011, MF Global issued a press release announcing that the Company had filed for Chapter 11 bankruptcy. The February and August Convertible Notes and Senior Notes have each defaulted.

14. MF Global has now admitted to federal investigators that money was missing from its customer accounts. Brokerages are not allowed to end the day with any shortfall in customer accounts. The Commodity Futures Trading Commission, which oversees the futures markets, is

working to track down the hundred of millions of dollars missing from MF Global's customers' futures accounts.

15. The true facts, which were known by defendants but were concealed from the investing public during the Class Period and omitted from the Registration Statement and Prospectuses, were as follows:

(a) MF Global had been misstating its capital ratios by misrepresenting the Company's exposure to European debt instruments;

(b) MF Global's leverage was so extreme that the true valuation of the European debt instruments would cause the Company to become insolvent;

(c) MF Global was not properly segregating client assets, leading to comingled funds; and

(d) MF Global was headed for collapse due to problems with European debt.

16. As a result of defendants' false statements, MF Global stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 87% from their Class Period high prior to the bankruptcy.

## JURISDICTION AND VENUE

17. The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77(l)(a)(2) and 77o], and §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and SEC Rule 10b-5 [17 C.F.R. §240.10b-5]. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §27 of the 1934 Act and §22 of the 1933 Act.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

19.     In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

## PARTIES AND OTHER ENTITIES

**Plaintiffs**

20.     (a)     Plaintiff IBEW Local 90 Pension Fund acquired MF Global publicly traded securities, as set forth in the accompanying certification, and has been damaged thereby.

(b)     Plaintiff Plumbers' & Pipefitters' Local #562 Pension Fund acquired MF Global publicly traded securities, as set forth in the accompanying certification, and has been damaged thereby.

**Relevant Non-Party**

21.     MF Global is a holding company. The Company acted as a broker in markets for commodities and listed derivatives.  MF Global is headquartered at 717 Fifth Avenue, New York, New York.  Its stock traded in an efficient market on the NYSE.

**Defendants**

22.     Defendant Jon S. Corzine ("Corzine") served as Chairman of the Board and Chief Executive Officer ("CEO") of MF Global from March 2010 until he resigned in November 2011. Defendant Corzine controlled the contents of the February and August Convertible Prospectuses and Senior Prospectus (collectively the "Prospectuses") and his statements were included in documents incorporated by reference in the false and misleading Registration Statement and Prospectuses.

- 6 -

23.     Defendant Bradley I. Abelow ("Abelow") was, at relevant times, Chief Operating Officer ("COO") and President of MF Global.

24.     Defendant John Randy MacDonald ("MacDonald") served as Chief Financial Officer ("CFO") of MF Global from April 2008 to March 2011, and thereafter served as Global Head of Retail Operations.  MacDonald signed the false and misleading Registration Statement.

25.     Defendant Henri J. Steenkamp ("Steenkamp") served as Chief Accounting Officer of MF Global from 2006 until assuming the position of CFO of MF Global in April 2011.  Steenkamp signed the false and misleading Registration Statement.

26.     Defendant Alison J. Carnwath ("Carnwath") served as Chairman of the Board of MF Global until 2010.  Carnwath signed the false and misleading Registration Statement.

27.     Defendant Eileen S. Fusco ("Fusco") serves as a director of MF Global.  Fusco signed the false and misleading Registration Statement.

28.     Defendant Martin John Gardner Glynn ("Glynn") serves as a director of MF Global. Glynn signed the false and misleading Registration Statement.

29.     Defendant Edward L. Goldberg ("Goldberg") serves as a director of MF Global. Goldberg signed the false and misleading Registration Statement.

30.     Defendant David I. Schamis ("Schamis") serves as a director of MF Global.  Schamis signed the false and misleading Registration Statement.

31.     Defendant David Gelber ("Gelber") serves as a director of MF Global.  Gelber signed the false and misleading Registration Statement.

32.     Defendant Robert S. Sloan ("Sloan") serves as a director of MF Global.  Sloan signed the false and misleading Registration Statement.

- 7 -

33.     Defendant David P. Bolger ("Bolger") serves as a director of MF Global.  Bolger signed the false and misleading Registration Statement.

34.     The defendants referenced above in ¶¶22-25 are referred to herein as the "Officer Defendants."

35.     The defendants referenced above in ¶¶26-33 are referred to herein as the "Director Defendants" and are named as defendants solely for violations of the 1933 Act.

36.     Defendant Goldman, Sachs & Co. ("Goldman") provides investment banking, securities and investment management services to a substantial and diversified client base that includes corporations, financial institutions, governments and high-net-worth individuals.  Goldman acted as the joint book-running manager for MF Global's February and August Convertible Offerings, helping to draft and disseminate the offering documents.

37.     Defendant Citigroup Global Markets Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment banking services, and commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities.  Citigroup acted as the joint book-running manager for MF Global's February and August Convertible Offerings, helping to draft and disseminate the offering documents.

38.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is the marketing name for the global banking and global markets businesses of defendant Bank of America Corporation.  Merrill Lynch offers trading and brokerage services; debt and securities underwriting; debt and equity research; and advice on public offerings, leveraged buyouts, and mergers and acquisitions.  Merrill Lynch acted as an underwriter for MF Global's February and August Convertible Offering and Senior Offering, helping to draft and disseminate the offering documents.

39.     Defendant J.P. Morgan Securities LLC ("JP Morgan") is the investment banking arm of financial services giant JPMorgan Chase & Co.   JP Morgan provides debt and equity underwriting, M&A and corporate restructuring advisory, securities dealing and brokerage, and trade execution services for large-market companies and institutional investors.  JP Morgan acted as an underwriter for MF Global's February and August Convertible Offerings, helping to draft and disseminate the offering documents.

40.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is the U.S. investment banking and securities arm of Deutsche Bank AG.  Deutsche Bank provides investment banking products and services.  Deutsche Bank acted as an underwriter for MF Global's February and August Convertible Offerings, helping to draft and disseminate the offering documents.

41.     Defendant RBS Securities Inc. ("RBS") is an indirect wholly-owned subsidiary of The Royal Bank of Scotland plc.  RBS is a U.S. investment bank/broker-dealer and is a leading fixed-income capital markets firm, underwriter, trader, and distributor of fixed-income investment products providing a full range of debt financing, risk management and investment services to major corporations and financial and governmental institutions around the world.   RBS acted as an underwriter for MF Global's February and August Convertible Offerings, helping to draft and disseminate the offering documents.

42.     Defendant Jefferies & Company, Inc. ("Jefferies") is a global investment bank and institutional securities firm. Jefferies provides clients with capital markets and financial advisory services, institutional brokerage, securities research, and asset management.  Jefferies acted as book-running manager for MF Global's Senior Offering, helping to draft and disseminate the offering documents.

43.     The defendants named in ¶¶36-42 are referred to herein as the "Underwriter Defendants" and are named as defendants solely for violations of the 1933 Act.

44.     Defendant Corzine and the defendants who signed the Registration Statement are liable for the false and misleading statements incorporated into the Registration Statement.  The Underwriter Defendants drafted and disseminated the offering documents and were paid more than $16.4 million in connection with the February and August Convertible Offerings and $4.8 million in connection with the Senior Offering.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

**FRAUDULENT SCHEME AND COURSE OF BUSINESS**

45.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about MF Global.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MF Global publicly traded securities was a success, as it: (i) deceived the investing public regarding MF Global's prospects and business; (ii) artificially inflated the prices of MF Global publicly traded securities; and (iii) caused plaintiffs and other members of the Class to purchase MF Global publicly traded securities at inflated prices.

**BACKGROUND**

46.     MF Global, together with its subsidiaries, operated as a broker of commodities and listed derivatives.  It delivered trading and hedging solutions as a broker-dealer across various markets for futures and options, commodities, fixed income, equities, and foreign exchange.  The Company provided access to approximately 70 exchanges around the world.  MF Global was also authorized to trade U.S. government securities with the Federal Reserve Bank of New York.  In addition, the Company provided research and market commentary to help clients make trading decisions, as well as offers clearing and settlement services.  Further, it provided client financing and securities lending services. MF Global operated primarily in the United States, the United Kingdom,

Australia, Singapore, India, Canada, Hong Kong, and Japan. The Company was formerly known as MF Global Ltd. and changed its name to MF Global Holdings Ltd. in January 2010. MF Global was founded in 1981 and is based in New York, New York.

47.     On or about February 24, 2010, MF Global filed with the SEC a Form S-8 POS Registration Statement for the Offerings (the "Registration Statement"). Shortly after this, defendant Corzine became Chairman and CEO of MF Global.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## MADE IN CONNECTION WITH THE OFFERINGS
## AND DURING THE CLASS PERIOD

48.     On February 3, 2011, MF Global issued a press release announcing its third fiscal quarter 2011 financial results. The Company reported a GAAP net loss of $9.7 million, or ($0.06) diluted EPS, and net revenue of $246.8 million for the third fiscal quarter ended December 31, 2010. The release stated in part:

> "The opportunity ahead is significant and the roadmap to achieve our objectives is clear," said Jon S. Corzine, chairman and chief executive officer, MF Global. "MF Global has taken the necessary steps to define our future and I believe we have crafted a strategic path forward to transition from a broker, to a broker-dealer, and eventually to a commodities and capital markets focused global investment bank."

> Mr. Corzine continued, "By aligning ourselves around client needs, our business model will focus on four main areas – institutional capital markets, retail services, transaction services and asset management. While some of these areas currently exist, others need retooling, and some will be built or acquired over time."

> "This transformation can fundamentally change our growth trajectory and profitability profile by delivering our clients a more comprehensive package of risk intermediation services. I believe our new model will create a growing and diversified revenue base, which will allow MF Global to deliver stable, double-digit returns to shareholders," Mr. Corzine concluded.

49.     On or about February 8, 2011, MF Global filed its February Convertible Prospectus, which forms part of the Registration Statement and which became effective on February 11, 2011. At least $250 million aggregate principal amount of MF Global's 1.875% February Convertible

Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $37.5 million principle amount of notes), raising $242 million in gross proceeds for the Company.

50.     The Registration Statement, February Convertible Prospectus and the documents incorporated therein, reported a net loss for the third fiscal quarter ended December 31, 2010 of $9.7 million, or ($0.06) diluted EPS, compared with a loss of $22.3 million or ($0.18) diluted EPS for the same period of the prior year.  The offering documents further reported net revenue of $246.8 million for the third fiscal quarter ended December 31, 2010, versus $251.0 million for the same period of the prior year.  In addition, the February Convertible Prospectus provided in pertinent part:

> Our business model is global and client-driven, and we have organized our business to centrally manage our resources to offer clients an expansive array of products across a broad range of markets and geographies. We operate and manage our business as a single operating segment. We do not manage our business by services or product lines, market types, geographic regions, client segments or any other exclusive category.

51.     The February Convertible Prospectus incorporated by reference MF Global's quarterly filings for the third fiscal quarter ended December 31, 2010, including a Form 8-K containing MF Global's third fiscal quarter financial results.  This Form 8-K stated in part:

> "The opportunity ahead is significant and the roadmap to achieve our objectives is clear," said Jon S. Corzine, chairman and chief executive officer, MF Global. "MF Global has taken the necessary steps to define our future and I believe we have crafted a strategic path forward to transition from a broker, to a broker-dealer, and eventually to a commodities and capital markets focused global investment bank."

> Mr. Corzine continued, "By aligning ourselves around client needs, our business model will focus on four main areas – institutional capital markets, retail services, transaction services and asset management. While some of these areas currently exist, others need retooling, and some will be built or acquired over time."

> "This transformation can fundamentally change our growth trajectory and profitability profile by delivering our clients a more comprehensive package of risk intermediation services. I believe our new model will create a growing and

diversified revenue base, which will allow MF Global to deliver stable, double-digit returns to shareholders," Mr. Corzine concluded.

52.     The Registration Statement and February Convertible Prospectus contained untrue statements of material facts or omitted to state other facts necessary in order to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

53.     On May 19, 2011, MF Global issued a press release announcing its fourth quarter and fiscal year 2011 financial results.  The Company reported a GAAP net loss of $51.5 million, or ($0.31) diluted EPS, and net revenue of $292.5 million for the fourth quarter.  Additionally, the Company reported a GAAP net loss of $154.4 million, or ($1.00) diluted EPS, and net revenue of $1,069.1 million for the fiscal year ended March 31, 2011.  The release stated in part:

> "During the last year, MF Global has been undergoing a strategic restructuring and our results reflect that transformative effort," said Jon S. Corzine, chairman and CEO, MF Global. "While our financial performance does not yet demonstrate our full potential, significant progress has been achieved and operating leverage has been put in place. Considerable effort to implement our new strategy will be ongoing in the year ahead."

> Mr. Corzine continued, "Most importantly, we have dramatically repositioned and upgraded our staff to meet the requirements of our strategic plan. The reset of personnel has been accompanied by a reformulated compensation philosophy and structure that reflects pay-for-firm performance."

> "We are committed to generating GAAP earnings and entering a path toward double-digit returns on equity."

> *       *       *

> "This year, our revenue increased while headcount is down, our overall cost structure is lower and EBITDA and EPS have improved," said Henri Steenkamp, chief financial officer, MF Global. "Our balance sheet is down more than 20 percent, while our client payables have expanded and our capital structure continues to improve. In short, we are working to deliver greater productivity from the new and existing resources and assets we have, while we continue to invest in the future."

54.     After releasing its financial results on May 19, 2011, MF Global hosted a conference call to discuss its fourth quarter and fiscal year 2011 results with investors, media representatives and analysts, during which defendant Corzine represented the following:

> Over the last year, I've discussed at length our plan to diversify revenue by expanding our broker dealer activities through principally both client facilitation and proprietary activities.  These efforts have already had a substantial impact on the firm's performance. In the fourth quarter, revenue from these principal trading activities more than doubled from the same period last year. As a percent of total revenue, client facilitation and proprietary activities were 33% in the fourth quarter, and 26% for the year.  Or nearly 17 percentage points higher for the quarter and 10% for the year.  Throughout the year, but particularly in the last quarter, we saw significant volatility across fixed income and commodities markets.  Core commodity markets, European peripherals and structured equity financing provided solid trading opportunities in the quarter.  We expect these and other circumstances to continue across multiple asset classes in volatile markets.  Our clients' demand for risk intermediation services should parallel that volatility.

55.     On July 28, 2011, MF Global issued a press release announcing its first fiscal quarter 2012 financial results.  The Company reported GAAP net income of $7.7 million, or $0.05 diluted EPS, and net revenue of $314.5 million for the first fiscal quarter ended June 30, 2011.  The release stated in part:

> "With net revenue and GAAP net income at their highest levels in nearly three years, this quarter's results reflect continued progress in MF Global's ongoing transformation," said Jon S. Corzine, chairman and CEO, MF Global. "We have made important strides in diversifying our revenue streams, expanding our trading capacity and upgrading talent, as well as in investing in the infrastructure necessary to execute our vision. We believe the depth and breadth of our transformation will continue as we enhance our capital markets offering, focus our global retail services, and more effectively organize our prime services capabilities."
>
> Mr. Corzine continued, "As we enter the final stages of the firm's core restructuring, we continue to evaluate both organic and strategic actions to accelerate our strategy of building an investment bank that will deliver growing revenues and competitive returns on capital. Our ongoing evaluations and financial performance will dictate the timing of our investment and hiring initiatives."

56.     On July 28, 2011, MF Global's stock was trading at $7.47 per share.

57.     On or about August 1, 2011, MF Global filed its August Convertible Prospectus, which forms part of the Registration Statement and which became effective on August 2, 2011. At least $325 million aggregate principal amount of MF Global's 3.375% August Convertible Notes were sold to the public at 100% per note (not including an over-allotment granted to the underwriters of up to an additional $45 million principle amount of notes), raising $316 million in gross proceeds for the Company.

58.     On or about August 4, 2011, MF Global filed its Senior Prospectus, which forms part of the Registration Statement and which became effective on August 8, 2011. At least $325 million aggregate principal amount of MF Global's 6.25% Senior Notes were sold to the public at 100% per note, raising approximately $320 million in gross proceeds for the Company.

59.     The Registration Statement, August Convertible Prospectus and Senior Prospectus, and the documents incorporated therein, reported net income for the first fiscal quarter ended June 30, 2011 of $7.7 million, or $0.05 diluted EPS, compared with $0.8 million or $0.01 diluted EPS for the same period of the prior year. The offering documents further reported net revenue of $314.5 million for the first fiscal quarter ended June 30, 2011, versus $289.4 million for the same period of the prior year. In addition, the August Convertible Prospectus provided in pertinent part:

> We have organized our business on a global basis to offer clients an extensive array of products across a broad range of markets and geographies. We seek to tailor our offerings from market to market to meet the demands of our clients by providing the most compelling products and services possible, while remaining within the regulations of a particular jurisdiction.
>
> We derive revenues from three main sources: (i) commissions generated from execution and clearing services; (ii) principal transactions revenue, generated both from client facilitation and proprietary activities, and (iii) net interest income from cash balances in client accounts maintained to meet margin requirements, as well as interest related to our collateralized financing arrangements and principal transactions activities.

60.     The Senior Prospectus represented:

We have organized our business on a global basis to offer clients an extensive array of products across a broad range of markets and geographies. We seek to tailor our offerings from market to market to meet the demands of our clients by providing the most compelling products and services possible, while remaining within the regulations of a particular jurisdiction.

We derive revenues from three main sources: (i) commissions generated from execution and clearing services; (ii) principal transactions revenue, generated both from client facilitation and proprietary activities, and (iii) net interest income from cash balances in client accounts maintained to meet margin requirements, as well as interest related to our collateralized financing arrangements and principal transactions activities.

We have recently announced a new strategic direction for MF Global. Under our new strategic plan, we intend to transform our business from a broker to a commodities and capital markets focused investment bank during the next three to five years. For more information on this plan of development and the associated risks, see our Annual Report, which is incorporated herein by reference.

61.     The August Convertible Prospectus and Senior Prospectus incorporated by reference MF Global's SEC filings for 2011, including a Form 8-K containing MF Global's first fiscal quarter financial results.  This Form 8-K stated in part:

"With net revenue and GAAP net income at their highest levels in nearly three years, this quarter's results reflect continued progress in MF Global's ongoing transformation," said Jon S. Corzine, chairman and CEO, MF Global. "We have made important strides in diversifying our revenue streams, expanding our trading capacity and upgrading talent, as well as in investing in the infrastructure necessary to execute our vision. We believe the depth and breadth of our transformation will continue as we enhance our capital markets offering, focus our global retail services, and more effectively organize our prime services capabilities.

Mr. Corzine continued, "As we enter the final stages of the firm's core restructuring, we continue to evaluate both organic and strategic actions to accelerate our strategy of building an investment bank that will deliver growing revenues and competitive returns on capital. Our ongoing evaluations and financial performance will dictate the timing of our investment and hiring initiatives."

*        *        *

"The evolution of our business model is taking shape, as client facilitation and principal activities accounted for nearly half of the firm's overall revenue base," said Henri Steenkamp, chief financial officer, MF Global. "At the same time, we remain diligent on costs, taking a strategic approach to our spending in order to advance our business objectives. Our compensation and non-compensation costs are

within the expected range this quarter, and our efforts to identify opportunities to more efficiently manage our operations are ongoing."

62.     The Registration Statement and August Convertible and Senior Prospectuses contained untrue statements of material facts or omitted to state other facts necessary in order to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

63.     On September 1, 2011, MF Global announced that it was required by the Financial Industry Regulatory Authority ("FINRA") to modify its capital treatment of certain repurchase transactions to maturity collateralized with European sovereign debt and thus increase its required net capital.

64.     On October 25, 2011, MF Global issued a press release announcing disappointing second fiscal quarter 2012 results.  The Company reported net revenue of $205.9 million for the second fiscal quarter of 2012, compared with $240.3 million for same period of the prior year. Additionally, the Company reported a GAAP *net loss* of $191.6 million, or ($1.16) diluted EPS for the second fiscal quarter ended September 30, 2011, compared with a loss of $94.3 million, or ($0.59) diluted EPS for the same period of the prior year.

65.     In addition, MF Global disclosed on October 25, 2011 that FINRA had not been satisfied with MF Global's prior representations and required that MF Global disclose that it held a long position of $6.3 billion in a short-duration European sovereign portfolio financed to maturity, including Belgium, Italy, Spain, Portugal and Ireland.

66.     On this news, MF Global's February and August Convertible Notes and Senior Notes dropped, falling to less than 50% of par.

67.     Also on October 25, 2011, *Bloomberg* issued an article entitled "MF Global Drops by Most Since 2008," which stated in part:

MF Global Holdings Ltd. (MF), the futures broker that had its credit rating cut yesterday to the lowest investment grade, reported its largest-ever quarterly loss, sending shares down the most since March 2008.

The net deficit was $191.6 million, or $1.16 a share, for the three months ended in September, compared with $94.3 million, or 59 cents, a year earlier, New York-based MF Global said today. The biggest prior decline was $111.7 million in the three months ended March 2009, according to data compiled by Bloomberg. Excluding costs from restructuring, deferring tax asset valuations and retiring debt, the loss was 9 cents a share, missing the 5-cent average profit estimate of 11 analysts surveyed by Bloomberg.

*    *    *

"MF's results are severely below expectations," Ed Ditmire, an analyst with Macquarie Group Ltd. in New York, wrote in a note to clients. "It's very likely that MF expectations need to be recalibrated lower over the near-term." Ditmire had expected it to earn 3 cents a share on an adjusted basis.

*    *    *

The firm's credit ratings were cut yesterday by Moody's Investors Service on concern that the broker won't meet earnings targets and isn't sufficiently managing risk. The rating company lowered the long-term ranking to Baa3 from Baa2 and left MF Global on review for a further downgrade.

"If market volatility stays elevated, we question how the firm is going to achieve the earnings necessary to avoid a downgrade of its debt to junk status, which in turn could materially impact its ability to act as a counterparty as well as raise MF's cost of debt," Patrick O'Shaughnessy, an analyst at Raymond James & Associates in Chicago, said in a note to clients.

68.     MF Global's credit ratings were reduced to below investment grade.

69.     Subsequently, on October 28, 2011, trading in MF Global common stock was halted on the NYSE.

70.     On October 31, 2011, MF Global announced that the New York Federal Reserve had suspended the Company's designation as a primary dealer.  Also on October 31, 2011, MF Global issued a press release announcing that the Company had filed for Chapter 11 bankruptcy.  The February and August Convertible Notes and Senior Notes have each defaulted.

71.     On November 1, 2011, *The Wall Street Journal* published an article entitled "MF

Global Collapses as Books Questioned," which stated in part:

> U.S. regulators are investigating the discrepancy, which relates to money
> from customers that couldn't be accounted for as MF Global raced to sell itself,
> according to people with knowledge of the probe. The probe is at an early stage, and
> it isn't clear if the money is missing or if the inconsistencies relate to sloppy
> bookkeeping.

*     *     *

> The firm filed for Chapter 11 bankruptcy protection Monday, the eighth-
> largest corporate bankruptcy in U.S. history and the biggest failure by a securities
> firm since Lehman Brothers Holdings Inc. filed for Chapter 11 in September 2008.

*     *     *

> On Monday afternoon, the Securities Investor Protection Corp. said it plans to
> start liquidating MF Global's brokerage unit in order to unfreeze customer accounts.
> The Financial Stability Oversight Council, a group of high-level U.S. regulators
> formed in the wake of the financial crisis to monitor systemic risk, said it held a
> conference call to review the situation.

72.     The article also explained how MF Global's improper manipulation of client assets

had come to light:

> Mr. Corzine, the former New Jersey governor and Goldman Sachs Group Inc.
> chairman, worked through the weekend to sell all or part of MF Global before
> trading resumed Monday. Last week's huge quarterly loss, two rating downgrades to
> "junk" status and growing jitters about the company's $6.3 billion bet on European
> sovereign debt left Mr. Corzine with few options.

> On Sunday evening, a handshake deal emerged in which Interactive Brokers
> Group would buy MF Global's assets, people familiar with the matter said. The deal
> would involve MF Global's holding company filing for bankruptcy protection and
> then auctioning assets.

> Lawyers were instructed to continue drafting documents to sew up the deal,
> and they left the midtown Manhattan headquarters of MF Global for their own
> offices to work out the details, these people said.

> But as the due-diligence process intensified, Interactive Brokers executives
> became concerned about MF Global's capital levels, according to people familiar
> with the matter. ***The worries centered on the amount of customer funds held on
> deposit by MF Global, with Interactive Brokers identifying what it felt were
> substantial discrepancies, people familiar with the matter said.***

- 19 -

The difference was roughly $900 million, these people said, though one person added that the figure was a "moving target." Some people said the difference shrank as MF Global provided more information.

"They still don't have it figured out" a person familiar with the matter said.

Officials from the SEC and CFTC, hunkered down in MF Global's offices in New York and Chicago since late last week, also weren't satisfied with the company's documentation of customer records, people familiar with the matter said Monday.

Such records are considered basic bookkeeping, and regulated futures-clearing firms like MF Global must report customer-funds data to the CFTC on a monthly basis. It is unclear whether any discrepancies existed when the earlier monthly reports were filed or whether they materialized later as MF Global came under stress in October.

73.     On November 4, 2011, defendant Corzine resigned.

74.     The FBI is now investigating the missing client funds.

75.     The true facts, which were known by the defendants but were concealed from the investing public during the Class Period and omitted from the Registration Statement and Prospectuses, were as follows:

(a)     MF Global had been misstating its capital ratios by misrepresenting the Company's exposure to European debt instruments;

(b)     MF Global's leverage was so extreme that the true valuation of the European debt instruments would cause the Company to become insolvent;

(c)     MF Global was not properly segregating client assets, leading to comingled funds; and

(d)     MF Global was headed for collapse due to problems with European debt.

76.     As a result of defendants' false statements, MF Global common stock traded at artificially inflated levels during the Class Period.  However, after the above revelations seeped into

the market, the Company's shares were hammered by massive sales, sending them down nearly 87% from their Class Period high.

## LOSS CAUSATION/ECONOMIC LOSS

77.     During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of MF Global securities and operated as a fraud or deceit on Class Period purchasers of MF Global securities by misrepresenting the Company's business and prospects. Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of MF Global securities fell precipitously, as the prior artificial inflation came out of the price over time and the Company ultimately filed for bankruptcy.  As a result of their purchases of MF Global securities during the Class Period, plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

78.     MF Global's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

79.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of MF Global who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased or acquired MF Global publicly traded securities during the Class Period, including those persons or entities who purchased or acquired the MF Global Notes pursuant or traceable to the Company's false and misleading Registration Statement and Prospectuses issued in connection with the Offerings and who were damaged thereby (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

81.     The members of the Class are so numerous that joinder of all members is impracticable.  MF Global securities were actively traded.  While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MF Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

82.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

83.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

84.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether the 1934 Act was violated by defendants' acts as alleged herein;

(c)     whether statements made by defendants to the investing public during the Class Period and in the Registration Statement and Prospectuses misrepresented material facts about the business, operations and management of MF Global; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

85.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of Section 11 of the 1933 Act
### Against All Defendants Except Abelow

86.     Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein. For purposes of this Count, plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

87.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except Abelow.

- 23 -

88.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

89.     MF Global is the registrant for the Offerings.  Defendant Corzine and the Director Defendants controlled MF Global.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement and Prospectuses.

90.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

91.     By reason of the conduct herein alleged, each defendant named herein violated, and/or controlled a person who violated, §11 of the 1933 Act.

92.     Plaintiffs acquired MF Global Notes pursuant to the Registration Statement.

93.     Plaintiffs and the Class have sustained damages.  The value of the MF Global Notes has declined substantially subsequent to and due to defendants' violations, and the MF Global Notes have ultimately defaulted.

94.     At the time of their purchases of MF Global Notes, plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to October 25, 2011.  Less than one year has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiffs filed this complaint.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiffs filed this complaint.

## COUNT II

### Violations of §12(a)(2) of the 1933 Act
### Against All Defendants Except Abelow

95.     Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein. For purposes of this Count, plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

96.     The Count is brought pursuant to §12(a)(2) of the 1933 Act against all defendants except Abelow.

97.     By means of the false Prospectuses, the defendants named herein assisted in sale of MF Global Notes to plaintiffs and other members of the Class.

98.     The Prospectuses contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  The defendants named herein owed plaintiffs and the other members of the Class who purchased MF Global Notes pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  These defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

99.     Plaintiffs did not know, nor in the exercise of reasonable diligence could they have known, of the untruths and omissions contained in the Prospectuses at the time plaintiffs acquired the MF Global Notes.

100.    By reason of the conduct alleged herein, the defendants named herein violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiffs and the

other members of the Class who purchased MF Global Notes pursuant to the Prospectuses sustained

substantial damages in connection with their purchases of MF Global Notes. Accordingly, plaintiffs

and the other members of the Class who hold such stock have the right to rescind and recover the

consideration paid for their shares, and hereby tender their shares to the defendants sued herein.

Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT III

### Violations of Section 15 of the 1933 Act
### Against Defendant Corzine and the Director Defendants

101.    Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein.

For purposes of this Count, plaintiffs expressly exclude and disclaim any allegation that could be

construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on

claims of strict liability and/or negligence under the 1933 Act.

102.    This Count is brought pursuant to §15 of the 1933 Act against defendant Corzine and

the Director Defendants.

103.    Defendant Corzine was CEO of MF Global and had control over the contents of the

Prospectuses, and had control over MF Global and the officers and employees of MF Global.

104.    Defendant Corzine and each of the Director Defendants was a control person of MF

Global by virtue of his or her position as a director and/or senior officer of MF Global. The Director

Defendants each had a series of direct and/or indirect business and/or personal relationships with

other directors and/or officers and/or major shareholders of MF Global.

105.    Defendant Corzine and the Director Defendants were each culpable participants in the

violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or

authorized the signing of the Registration Statement and/or having otherwise participated in the

process which allowed the Offerings to be successfully completed.

## COUNT IV

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against the Officer Defendants

106.     Plaintiffs incorporate ¶¶1-94 by reference.

107.     During the Class Period, the Officer Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

108.     The Officer Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

　　　　　(a)      employed devices, schemes and artifices to defraud;

　　　　　(b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

　　　　　(c)      engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiffs and others similarly situated in connection with their purchases of MF Global publicly traded securities during the Class Period.

109.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MF Global publicly traded securities.  Plaintiffs and the Class would not have purchased MF Global publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by the Officer Defendants' misleading statements.

## COUNT V

### Violations of §20(a) of the 1934 Act
### Against the Officer Defendants

110.     Plaintiffs incorporate ¶¶1-94 and 106-109 by reference.

111.   The Officer Defendants acted as controlling persons of MF Global within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of MF Global stock, the Officer Defendants had the power and authority to cause MF Global to engage in the wrongful conduct complained of herein.  The Officer Defendants controlled MF Global and all of its employees.  By reason of such conduct, the Officer Defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief and judgment, as follows:

A.   Determining that this action is a proper class action and certifying plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.   Awarding rescission or a rescissory measure of damages; and

E.   Such equitable/injunctive or other relief as may be deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury

DATED: November 18, 2011               ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       DAVID A. ROSENFELD


                                       _____
                                       DAVID A. ROSENFELD

- 28 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBERT M. CHEVERIE & ASSOCIATES
GREGORY CAMPORA
Commerce Center One
333 E. River Drive, Suite 101
East Hartford, CT  06108
Telephone:  860/290-9610
860/290-9611 (fax)

Attorneys for Plaintiffs

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

IBEW LOCAL 90 PENSION FUND ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*IBEW Local 90 Pension Fund v. Deutsche Bank AG, et al.*, No. 11-cv-04209 (S.D.N.Y.)

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

MF GLOBAL

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18 day of November, 2011.

IBEW LOCAL 90 PENSION FUND

By: _____

Its: _____ Chairman

- 2 -

MF GLOBAL

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 02/08/2011 | 1.875% due 02/01/2016 | 10.000 | $100.00 |
| 02/14/2011 | 1.875% due 02/01/2016 | 5,000 | $103.94 |
| 02/15/2011 | 1.875% due 02/01/2016 | 10,000 | $104.00 |
| 07/28/2011 | 3.375% due 08/01/2018 | 30,000 | $100.00 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 10/25/2011 | 1.875% due 02/01/2016 | 25,000 | $48.00 |
| 10/25/2011 | 3.375% due 08/01/2018 | 10,000 | $48.00 |
| 10/28/2011 | 3.375% due 08/01/2018 | 20,000 | $40.50 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS' & PIPEFITTERS' LOCAL #562 PENSION FUND ("Plaintiff")
declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the
direction of plaintiff's counsel or in order to participate in this private action or any
other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the
class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in
the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a
class action that was filed under the federal securities laws within the three-year
period prior to the date of this Certification except as detailed below:

*In re McDermott International, Inc. Sec. Litig.*, No. 08-9943 (S.D.N.Y.)

6.      The Plaintiff will not accept any payment for serving as a representative
party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

MF GLOBAL

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _10TH_ day of _NOVEMBER_, 2011.

PLUMBERS' & PIPEFITTERS' LOCAL
#562 PENSION FUND

By: _____

Its: _EXECUTIVE DIRECTOR_

- 2 -

MF GLOBAL

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 08/03/2011 | 6.25% due 08/08/2016 | 500,000 | $100.00 |